STATE OF NORTH CAROLINA v. PINKNEY THOMAS MITCHELL, JR. AND WALLACE CHARLES LANFORD, JR.

No. 7

(Filed 7 October 1975)

1. Criminal Law § 92— consolidated trial of two defendants

Indictments charging two defendants with the same crimes may be consolidated for trial in the discretion of the court.

2. Criminal Law § 92— consolidated trial of two defendants — absence of prejudice

The consolidation of charges against two defendants for first degree murder and felonious burning of personalty was not prejudicial to the first defendant because the brother-in-law of the second defendant testified as to admissions to him by both defendants; nor was the consolidation prejudicial to the second defendant because the first defendant testified at trial and attempted to mitigate the killing on the ground he was under the influence of intoxicants and drugs where the first defendant attempted to exonerate the second defendant.

State v. Mitchell

3. Homicide § 21— first degree murder — sufficiency of evidence

In a prosecution for first degree murder, the State's evidence was sufficient to support an inference of premeditation and deliberation as well as the other elements of the offense where it tended to show that defendants abducted the sixteen-year-old victim and had sexual relations with her; defendants told another that they had killed the victim; defendants departed in the victim's automobile and later burned it in order to destroy any evidence in it; defendants secured another vehicle in which to leave the county; and the victim was found tied to a tree, gagged, and stabbed numerous times in vital areas of the body.

4. Criminal Law § 43; Homicide § 20— admissibility of photographs

In a prosecution for first degree murder and felonious burning of the victim's automobile, photographs of the area in which the victim lived and where she was seen with defendants and photographs of deceased, her automobile and its contents were properly admitted to establish the identification of the victim, the ownership of the automobile, and the identification of the general area where the crimes had their inception.

5. Homicide § 15— home life of victim — harmless error

In a prosecution for first degree murder allegedly committed after the victim had been kidnapped and raped, the admission of evidence of the victim's home life, if erroneous, was clearly harmless beyond a reasonable doubt.

APPEAL by defendants from sentences of death imposed by *Grist, J.,* 21 October 1974 Criminal Session of GASTON County Superior Court. Upon motion of each defendant, we certified for initial appellate review by this Court their appeals from the prison sentences imposed in the same trial upon their convictions of felonious burning of personal property.

Defendants were tried upon bills of indictment charging them with first-degree murder and felonious burning of personal property. The cases were consolidated for trial over objection of each defendant. Defendants entered pleas of not guilty to each charge and the jury returned a verdict of guilty on both charges.

The State's evidence tended to show the following: On 21 April 1974 Kathy Smiley and her twelve-year-old sister, Patricia, left their home in Atlanta to meet their father, F. Dale Smiley (who was separated from their mother), for breakfast at a restaurant about five miles away. Kathy drove a reddish-orange Volkswagen which belonged to her father. After breakfast, the father and Patricia left to go to Lake Lanier for boating. Kathy intended to go home and to get her water skis

and pick up her boyfriend before joining her father. The last time the father saw Kathy she was crossing I-85.

Kathy was seen walking down an access road near a Shell service station in Atlanta at about 10:15 a.m. The Volkswagen was parked close by with the blinker lights on. Between 10:00 a.m. and noon Kathy was seen at the Shell service station in the Volkswagen with both defendants. Nothing unusual occurred at that time.

On the same day, defendants and Kathy arrived in Gaston County in the Volkswagen. They picked up the witness Rafferty, who got in the back seat with Kathy. They drove into a wooded area and Mitchell said to Kathy, "This is it." Kathy was taken down into the woods and Mitchell had sexual relations with her while Lanford waited at the car. Then Lanford went down and had sexual relations with her. Afterwards they drove towards Crowder's Mountain and Rafferty got out of the car at a stop sign. The body of Kathy was found later at about 5:00 p.m. on the same day at the site of the old Lincoln Academy which is near Crowder's Mountain. She had been "gagged" with an electrical cord and her dead body tied to a tree. She had been stabbed many times in the neck, the heart, and other parts of the body.

The defendants were afterwards seen alone in the Volkswagen. Later that evening Lanford, in the presence of Mitchell, told his brother-in-law (Stewart), "We done the big one. . . . We killed a girl. . . . Murder one." Defendant Mitchell said in reply, "Yeah, we did, there's her car." (Referring to the Volkswagen.) Lanford asked Stewart for his car and weapons, but Stewart refused any assistance. Also Lanford tried to convince his brother-in-law that he had killed the girl and offered to take him to the Lincoln Academy site to prove it. Stewart declined to go and the defendants drove off alone. When they returned to Stewart's house about one hour later, they reported that the girl's body had been removed. Later that evening in the vicinity of Lincoln Academy (where Kathy's body was found) there was an explosion and the Volkswagen was observed burning.

The next day Mitchell, in the presence of Lanford, said that they had burned the Volkswagen; that the owner of the Volkswagen was dead; and that the girl who was killed on Crowder's Mountain the night before was the owner of the Volkswagen.

State v. Mitchell

As a result of this conversation, defendants obtained a blue Datsun from Frances Mitchell (defendant Mitchell's sister) and returned to the home of Lanford's brother-in-law (Stewart) seeking weapons, but they had been moved to Lanford's father's house. While at the brother-in-law's house, Lanford admitted having intercourse with Kathy, but said that it was not rape. Counsel for Lanford, on instructions from his client, did not cross-examine Stewart.

The evidence presented by defendant Mitchell tended to show the following: On 21 April 1974 he was in Atlanta with defendant Lanford. They were taking dope and drinking and planned to hitchhike to Gaston County. They observed a girl walking up the road and engaged her in conversation. She said that she had "done dope" before and wanted some more and that her automobile was out of gasoline. Defendant Lanford went to a filling station and got a can of gasoline. Later she directed them to a place to get dope, but no one was there. Thereupon she said that she had some in the dashboard. They smoked marijuana and drank some whiskey. Mitchell asked Kathy to take them to North Carolina. She agreed on the condition that they buy her some gasoline. She placed a telephone call to her mother before leaving. Mitchell stated that in addition to smoking "grass" and drinking some liquor on that day, he had also taken some THC and cocaine. He said he seduced Kathy on the way back to North Carolina. Upon arriving in Gaston County they went to the Lincoln Academy area and again had sexual intercourse. Mitchell then asked her to commit oral sex on him and she refused. Mitchell knocked her to the ground, grabbed her by the hair and stabbed her repeatedly. About this time, defendant Lanford came up from behind and grabbed him. He told Lanford to leave him alone and in a fit of anger threw Lanford to the ground, hitting him three or four times. Lanford got up and ran away. Just before leaving, Lanford said, "Don't cut me." Mitchell said that the next thing he remembers he was carrying the girl's dead body up through the woods. He was on dope and was "seeing things." He tied Kathy to a tree in a sitting position. Shortly thereafter, Mitchell told Lanford he had killed the girl. Lanford said, "I know you are crazy enough to kill me, but I don't believe you killed that girl." Later Mitchell said that he did not remember killing her, but he had blood all over him and she was dead. That night he went back and burned the car. Lanford was present. Mitchell said that he had sexual relations with Kathy, but that defend-

ant Lanford did not touch her and had nothing to do with the killing. Mitchell also denied conversations with others who had testified against him.

Defendant Mitchell, who had been convicted of traffic offenses, assault, fighting, larceny, and the larceny of an automobile, had escaped from the North Carolina Department of Corrections and had been at large for four months when this killing occurred.

Defendant Lanford offered no evidence.

*Attorney General Rufus L. Edmisten by Associate Attorney Robert W. Kaylor for the State.*

*Robert H. Forbes for Pinkney Thomas Mitchell, Jr. and Robert E. Gaines for Wallace Charles Lanford, Jr., representing defendant appellants.*

COPELAND, Justice.

Defendants were represented by separate counsel and filed separate appeals. Some of the assignments of error are the same and some relate only to one defendant.

[1]  Our Court has held that where there are two indictments in which both defendants are charged with the same crimes, then they may be consolidated for trial in the discretion of the court. *State v. Combs,* 200 N.C. 671, 674, 158 S.E. 252, 254 (1931). "The Court is expressly authorized by statute in this State to order the consolidation for trial of two or more indictments in which the defendant or defendants are charged with crimes of the same class, which are so connected in time or place as that evidence at the trial of one of the indictments will be competent and admissible at the trial of the others. [Citations omitted.]" *Id.* at 674, G.S. 15-152; *State v. Dawson,* 281 N.C. 645, 190 S.E. 2d 196 (1972) ; *State v. White,* 256 N.C. 244, 123 S.E. 2d 483 (1962).

[2]  Defendant Mitchell contends the consolidation was prejudicial to him because of the testimony of William Richard Stewart, the brother-in-law of defendant Lanford. A careful examination of the record indicates that Stewart testified as to substantially similar incriminating statements made by each defendant in the presence of one another. In essence, Mitchell adopted Lanford's admissions to Stewart. This assignment is overruled.

State v. Mitchell

Defendant Lanford contends that the consolidation was prejudicial against him because defendant Mitchell testified in his own behalf at the trial and attempted to mitigate the killing and reduce it to second-degree murder because of his use of drugs and intoxicants. Lanford contends that this especially hurt his case since he elected not to testify in his own behalf. There is absolutely nothing in the record to indicate that the trial judge in making his ruling on consolidation knew that Mitchell would take the witness stand. In any event, Mitchell had a right to testify if he wished and Lanford could cross-examine him. Moreover, it is difficult to understand how Lanford can contend that he was prejudiced by Mitchell testifying when in fact Mitchell admitted the killing and the burning of the vehicle and attempted by his testimony to exonerate Lanford in every way. It was proper and appropriate for the two defendants to be tried together and there is no merit to this assignment of error.

Defendants Lanford and Mitchell next contend that the court should have dismissed the cases against them as of nonsuit and for mistrial for the charges of first-degree murder at the close of the State's evidence and at the close of all the evidence. Lanford makes a similar contention with respect to the charge of felonious burning of personal property.

Upon a motion for nonsuit, the trial court must consider the evidence in the light most favorable to the State. The trial court is not concerned with the weight of the testimony, but only with whether the evidence, be it direct or circumstantial, supports sending the case to the jury. *State v. McNeil,* 280 N.C. 159, 185 S.E. 2d 156 (1971) ; *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469 (1968). Conflicts and discrepancies in the evidence should be resolved in the State's favor. *State v. Cooper,* 286 N.C. 549, 213 S.E. 2d 305 (1975) ; *State v. McNeil, supra; State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679 (1967).

In order to convict the defendant of first-degree murder, the State must satisfy the jury beyond a reasonable doubt of all the elements thereof, to wit, an unlawful killing of a human being with malice and with a specific intent to kill and committed after premeditation and deliberation.

"Of course, ordinarily, it is not possible to prove premeditation and deliberation by direct evidence. Therefore, these elements of first degree murder must be established by proof of

circumstances from which they may be inferred. [Citations omitted.] Among the circumstances to be considered by the jury in determining whether a killing was with premeditation and deliberation are: want of provocation on the part of the deceased; the conduct of the defendant before and after the killing; the use of grossly excessive force; or the dealing of lethal blows after the deceased has been felled. [Citations omitted.]" *State v. Buchanan,* 287 N.C. 408, 420-21, 215 S.E. 2d 80, 87-88 (1975). *State v. Van Landingham,* 283 N.C. 589, 197 S.E. 2d 539 (1973); *State v. Hamby* and *State v. Chandler,* 276 N.C. 674, 174 S.E. 2d 385 (1970); *State v. Sanders,* 276 N.C. 598, 174 S.E. 2d 487 (1970); *State v. Walters,* 275 N.C. 615, 170 S.E. 2d 484 (1969); *State v. Faust,* 254 N.C. 101, 118 S.E. 2d 769 (1961).

[3] An analysis of the facts of the case in relation to these factors reveals a want of provocation by the deceased—a sixteen-year-old girl. The conduct of defendants before and after the killing supported an inference of premeditation and deliberation as well as the other elements of the crimes charged. The State's evidence permits the following reasonable inferences: defendants abducted the victim and had sexual relations with her; defendants told Stewart that they had killed the victim; defendants later departed in the victim's automobile and burned it in order to destroy any evidence; and defendants secured another vehicle in which to leave Gaston County. The use of grossly excessive force was indicated when the deceased was found tied to a tree, gagged, and stabbed numerous times in vital areas of the body. In summation, there was plenary evidence as to both defendants from which to show premeditation and deliberation as well as the other elements of the crimes involved. This assignment of error is without merit and is overruled.

Defendant Mitchell contends that the trial court committed error in the charge to the jury. Counsel for Mitchell, with commendable frankness, states that none of the exceptions, in his opinion, would entitle Mitchell to a new trial. Counsel requests the court to review the charge. This has been done and we conclude that there was no error.

Defendant Mitchell contends the court erred in permitting the witness Shellnut to change his description of the defendants on voir dire. There was no voir dire of Shellnut and he did not identify defendants. There is no merit in this argument.

State v. Mitchell

Defendant Mitchell also contends that it was improper for the court to receive evidence concerning the home life of the deceased, photographs of the area in which she lived and where she was seen with the defendants, and photographs of the deceased, the automobile, and its contents.

In connection with these assignments of error, counsel for the defendant concedes that none of these individually would entitle the defendant to a new trial, but should be considered reversible error when considered as a whole.

[4, 5] All of this evidence, save that of the home life of the victim, was competent and relevant to establish the identification of the victim, the ownership of the Volkswagen, and the identification of the general area where the crimes had their inception. The photographic evidence was introduced with limiting instructions for the purpose of illustrating the testimony of the witnesses. *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969). If the evidence pertaining to the home life of the deceased was error, then it was clearly harmless beyond a reasonable doubt. *State v. Jones,* 280 N.C. 322, 185 S.E. 2d 858 (1972); *Chapman v. California,* 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824 (1967). These assignments of error are overruled.

Defendant Mitchell also contends that admission of the testimony of the witness Stewart was prejudicial error. As stated earlier in the discussion on consolidation, there is no merit in this related contention for the reasons there stated.

A further contention of Mitchell is that the failure of Lanford to testify caused the jury to have grave doubts concerning Mitchell's defense. This argument has no merit. The record indicates that Mitchell by his own testimony admitted the killing and the burning of the Volkswagen and attempted to excuse himself of murder in the first degree because of the use of drugs and intoxicating beverages.

Defendant Mitchell contends that he did not have sufficient mental capacity to form the necessary premeditation and deliberation. In this connection, the trial court properly charged the jury on the law relative to voluntary intoxication and voluntary use of drugs. It was properly left for the jury to determine whether Mitchell's mental condition was so affected by intoxication or drugs that he was rendered incapable of forming a deliberate and premeditated purpose to kill. *State*

---

---

*v. Propst,* 274 N.C. 62, 161 S.E. 2d 560 (1968). This assignment of error is overruled.

Both defendants contend that the court erred by refusing to set the verdict aside as being against the greater weight of the evidence and refusing to declare a mistrial. These motions were addressed to the discretion of the trial court. That discretion was not abused. 3 Strong, N. C. Index 2d, Criminal Law, §§ 128, 132. As a matter of fact, we have fully considered this in the discussion on the motions for nonsuit. These assignments are without merit and are overruled.

The defendants have had a fair trial free from prejudicial error. Kathy was sent to her death in a vicious manner by these defendants. The case was ably prepared and presented by the district attorney and carefully and fairly tried by Judge Grist.

In the trial we find

No error.