STATE OF NORTH CAROLINA v. HAMILTON JUNIOR COZART

No. COA97-1248

(Filed 20 October 1998)

## 1. Homicide— attempted first-degree murder—elements— evidence sufficient

The trial court did not err by denying defendant's motion to dismiss an attempted first-degree murder charge for insufficient evidence. A person commits the crime of attempted first-degree murder if he specifically intends to kill another person unlawfully; does an overt act calculated to carry out that intent that

STATE v. COZART

[131 N.C. App. 199 (1998)]

goes beyond mere preparation; acts with malice, premeditation, and deliberation; and falls short. There was sufficient evidence in this case of each element and that defendant was the perpetrator.

**2. Homicide— attempted second-degree murder as lesser included offense—instruction refused—evidence of premeditation not contradicted**

The trial court did not err in an attempted first-degree murder prosecution by not instructing the jury on attempted second-degree murder. A person commits the crime of attempted second-degree murder when he specifically intends to kill another person unlawfully; does an overt act calculated to carry out that intent that goes beyond mere preparation; acts with malice; and falls short. The only elements that distinguish attempted first-degree murder from attempted second-degree murder are premeditation and deliberation; here, there was no evidence to contradict the State's evidence of premeditation and deliberation.

**3. Homicide— attempted first-degree murder—assault with a deadly weapon not a lesser included offense**

The trial court did not err in a prosecution for attempted first-degree murder by not giving an instruction on assault with a deadly weapon with intent to kill. Although defendant contends that assault with a deadly weapon with intent to kill is a lesser included offense of attempted first-degree murder, use of a deadly weapon is an element not required for attempted first-degree murder.

**4. Witnesses— cross-examination—scope limited—no prejudice**

There was no prejudicial error in a prosecution for attempted first-degree murder in the court's limiting the scope of cross-examination of a State's witness who testified that she was not present at the time of the shooting and whom defendant wished to impeach with an affidavit stating that she was present. There was no reason for the limitations placed on defendant's use of the purported affidavit; however, defendant was able to impeach the witness's trial testimony by asking her about a prior statement to an investigating officer and, moreover, this witness's testimony added very little to the State's case.

STATE v. COZART

[131 N.C. App. 199 (1998)]

### 5. Evidence— hearsay—affidavit contradicting testimony

The trial court did not err by refusing to admit as substantive evidence the purported affidavit of a witness containing a statement which contradicted her trial testimony. The statement was inadmissible hearsay as substantive evidence.

### 6. Witnesses— cross-examination—questions not allowed— no offer of proof

The trial court did not err in a prosecution for attempted first-degree murder by preventing defendant on cross-examination of several witnesses from asking certain questions about recent fights between defendant, defendant's family, and the State's witnesses. Defendant made no offer of proof regarding the responses.

Appeal by defendant from judgments entered 1 May 1997 by Judge Knox V. Jenkins, Jr. in Johnston County Superior Court. Heard in the Court of Appeals 19 August 1998.

*Attorney General Michael F. Easley, by Associate Attorney General Teresa L. Harris, for the State.*

*Paul Pooley for defendant.*

LEWIS, Judge.

Defendant was convicted of discharging a firearm into occupied property and attempted first-degree murder. We find no error.

The State's evidence, including the testimony of six eyewitnesses, tended to show the following. On 27 March 1996, around 5:15 p.m., Deshawn Holley was involved in an altercation with defendant. Holley left and traveled to the home of his cousin, Gennive Walden, at 511 Benton Street in Benson, where several relatives were visiting. Holley stayed outside on the porch.

About ten minutes after Holley arrived, a green Bronco driven by Terence Green pulled up outside the Walden home. Defendant, Albert Coleman, and Jeremy Stallings got out of the Bronco. When Holley saw them, he grabbed a stick from someone who was also standing on the porch. Holley pointed the stick at defendant and the others and told defendant if he came any closer, Holley would hit him in the head. Defendant then snapped his fingers, said, "This is for you, punk m----- f----," and told Coleman to "get the guns." Coleman went to the

Bronco and took out several guns. He handed them to Stallings and defendant. Defendant then said, "Shoot," and the three began firing at the porch from about twenty-five yards away. Holley and his relatives ran inside. About eight rounds were fired, at least one of which shattered a window and entered the house. Some of the bullets passed over the heads of those on the porch, but no one was hit.

[1] On appeal, defendant first argues that the trial court should have granted his motion to dismiss the attempted first-degree murder charge for lack of sufficient evidence. A motion to dismiss on the ground of insufficient evidence should be denied if there is substantial evidence of each element of the crime, and that defendant was the perpetrator. *State v. Roddey*, 110 N.C. App. 810, 812, 431 S.E.2d 245, 247 (1993). Substantial evidence is such relevant evidence as a reasonable mind might find sufficient to support a conclusion. *Id.*

First-degree murder is the unlawful killing of a human being with malice and with a specific intent to kill, committed after premeditation and deliberation. N.C. Gen. Stat. § 14-17 (1993); *State v. Mitchell*, 288 N.C. 360, 365, 218 S.E.2d 332, 336 (1975), *death sentence vacated*, 428 U.S. 904, 49 L. Ed. 2d 1210 (1976). "Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation." *State v. Conner*, 335 N.C. 618, 635, 440 S.E.2d 826, 835-36 (1994). "Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *Id.* at 635, 440 S.E.2d at 836. In the context of attempted first-degree murder, circumstances that may tend to prove premeditation and deliberation include: (1) lack of provocation by the intended victim or victims; (2) conduct and statements of the defendant both before and after the attempted killing; (3) threats made against the intended victim or victims by the defendant; and (4) ill will or previous difficulty between the defendant and the intended victim or victims. *State v. Myers*, 299 N.C. 671, 677, 263 S.E.2d 768, 772 (1980).

A person "attempts" to commit a crime when he intends to commit the crime; he performs an overt act calculated to carry out that intent, going beyond mere preparation; and he falls short of committing the crime. *State v. Collins*, 334 N.C. 54, 60, 431 S.E.2d 188, 192 (1993). Thus: A person commits the crime of attempted first-degree

murder if he specifically intends to kill another person unlawfully; he does an overt act calculated to carry out that intent, going beyond mere preparation; he acts with malice, premeditation, and delibera-tion; and he falls short of committing the murder.

In this case, there was sufficient evidence of each element of attempted first-degree murder and that defendant was the perpetra-tor. Defendant's intent to kill Holley with malice can be inferred from his shooting at the porch from twenty-five yards away and from his ordering others to shoot at the porch from this range, particularly after telling defendant, "This is for you, punk m---- f-----." Defendant's premeditation and deliberation can be inferred from the fact that defendant assaulted Holley in his car just minutes before the shoot-ing; that defendant sought out Holley; that guns were on board the Bronco when it arrived at the scene of the shooting; and that defend-ant snapped his fingers and ordered his companions to get the guns and open fire. Finally, it goes without saying that defendant's firing a gun at Holley is an overt act, going beyond mere preparation, in fur-therance of his intent to kill Holley. Defendant's motion to dismiss the attempted first-degree murder charge was correctly denied.

[2] Next, defendant argues that the trial court should have instructed the jury on the lesser-included offense of attempted second-degree murder.

Second-degree murder is the unlawful killing of another person with malice, but without premeditation and deliberation. N.C. Gen. Stat. § 14-17 (1993); *State v. Geddie*, 345 N.C. 73, 94, 478 S.E.2d 146, 156 (1996). A person commits the crime of attempted second-degree murder when he specifically intends to kill another person unlaw-fully; he does an overt act calculated to carry out that intent, going beyond mere preparation; he acts with malice; and he falls short of committing the murder.

A defendant is not entitled to an instruction on second-degree murder in addition to an instruction on first-degree murder "[i]f the [State's] evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense of murder in the first degree, including premeditation and deliberation, and there is no evi-dence to negate these elements other than defendant's denial that he committed the offense." *State v. Strickland*, 307 N.C. 274, 293, 298 S.E.2d 645, 658 (1983), *overruled in part on other grounds by State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986). The same analysis applies to determining whether a defendant is entitled to an instruc-

tion on attempted second-degree murder where the jury is instructed on attempted first-degree murder. The only elements that distinguish attempted first-degree murder from attempted second-degree murder are premeditation and deliberation.

In this case, there was no evidence to contradict the State's evidence of premeditation and deliberation. No instruction on attempted second-degree murder was warranted.

[3] Defendant also argues that he was entitled to an instruction on assault with a deadly weapon with intent to kill in violation of N.C. Gen. Stat. § 14-32(c) (1993). Defendant claims that assault with a deadly weapon with intent to kill is a lesser-included offense within the crime of attempted first-degree murder. We disagree. Assault with a deadly weapon with intent to kill requires proof of an element not required for attempted first-degree murder: the use of a deadly weapon. It is not a lesser-included offense of attempted first-degree murder. *See State v. Westbrooks*, 345 N.C. 43, 55, 478 S.E.2d 483, 491 (1996).

[4] In his next assignment of error, defendant claims that the trial court improperly limited the scope of his cross-examination of State witness Gennive Walden. At trial, Walden testified, among other things, that she was not present at the time of the shooting but arrived there about thirty minutes later. Defendant wanted to impeach Walden with a document purporting to be an affidavit executed by Walden some ten months before trial. The purported affidavit includes a statement that Walden was present at the time of the shooting.

At a hearing held outside the presence of the jury, Walden testified that someone else had typed up the paper, that she did not recall having read or having been read the final statement before signing it, and that the paper she signed did not include a statement that she was present when shots were fired. The trial court indicated that it would restrict the use of the affidavit in cross-examination. The reason the trial court restricted use of the affidavit is unclear. It appears the trial judge believed that Gennive Walden was not, in fact, present at the scene of the shooting, and that limiting the use of the purported affidavit during cross-examination would prevent perjured testimony from reaching the jury.

When the jury returned and Gennive Walden was cross-examined, Walden admitted signing the purported affidavit. The trial court sus-

tained objections to the reading of any part of the purported affidavit, including the statement that Walden was present at the scene of the shooting. When defendant offered the affidavit into evidence, apparently for impeachment purposes, the trial court refused to allow the jury to see the statement but allowed defendant to argue to the jury that Walden admitted signing a statement that she was present at the time of the shooting.

A witness is ordinarily subject to impeachment on cross-examination through the use of prior inconsistent statements. N.C.R. Evid. 607, 611(b), 613; *State v. McKeithan*, 293 N.C. 722, 730, 239 S.E.2d 254, 259 (1977). We find no reason for limitations placed on defendant's use of the purported affidavit for impeachment purposes.

Nevertheless, we believe that the trial court's error was harmless beyond a reasonable doubt. *See* N.C. Gen. Stat. § 15A-1443 (1997). Defendant was able to impeach Gennive Walden's trial testimony that she was not present at the time of the shooting by asking her about a prior inconsistent statement she made to an investigating officer. More important, because Walden's testimony added very little, if anything, to the State's case, a more extensive assault on her credibility would not have helped the defense.

[5] Defendant next argues that the trial court erred in refusing to admit Gennive Walden's purported affidavit as substantive evidence. It is not clear from the record whether defendant actually attempted to introduce Walden's affidavit as substantive evidence. Assuming that such a tender was made, the trial court correctly refused to admit it in evidence. As substantive evidence, Ms. Walden's prior statement was inadmissible hearsay. N.C.R. Evid. 801, 802. It fell within no established exception to the hearsay rule and was not inherently trustworthy. *See* N.C.R. Evid. 803.

[6] Finally, defendant argues that the trial court erred by preventing defendant, in his cross-examination of several witnesses, from asking certain questions about recent fights between defendant, defendant's family, and the State's witnesses. Defendant made no offer of proof regarding what the witnesses' responses would have been. We thus conclude that the exclusion of such evidence was not error. *See State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985).

No error.

Judges MARTIN, John C. and WALKER concur.