STATE OF NORTH CAROLINA v. MIKEL OLANDA RAINEY

No. COA02-129

(Filed 3 December 2002)

**1. Homicide— attempted first-degree murder—assault with a deadly weapon inflicting serious injury not a lesser-included offense**

The trial court did not err in an attempted first-degree murder case by failing to instruct on assault with a deadly weapon inflicting serious injury as a lesser-included offense because it is not a lesser-included offense of attempted first-degree murder when assault with a deadly weapon inflicting serious injury requires the State to prove the existence of a deadly weapon and attempted murder does not require a deadly weapon.

**2. Homicide— attempted voluntary manslaughter—recognized in North Carolina**

Attempted voluntary manslaughter is a recognized crime in North Carolina, because: (1) heat of passion voluntary manslaughter is essentially a first-degree murder where a defendant's reason is temporarily suspended by legally adequate provocation; and (2) the specific intent to kill does exist in the mind of such a defendant although the defendant is only legally culpable for the general intent since the specific intent is not based on cool reflection but rather on an adequate provocation that would cause an individual with an ordinary firmness of mind to become provoked.

**3. Homicide— attempted first-degree murder—instruction on attempted voluntary manslaughter not required**

The trial court did not err in an attempted first-degree murder case by failing to instruct on the lesser-included offense of attempted voluntary manslaughter even though defendant shot at the victim for sleeping with defendant's thirteen-year-old sister, because: (1) the evidence revealed that defendant sought out the victim after learning of the alleged relationship through a conversation and did not discover his thirteen-year-old sister and the victim in an illicit act; and (2) defendant did not act immediately under a heat of passion but rather under an indulgence of revenge or malice.

STATE v. RAINEY

[154 N.C. App. 282 (2002)]

Appeal by defendant from judgment entered 19 July 2001 by Judge Dwight L. Cranford in Superior Court, Halifax County. Heard in the Court of Appeals 16 October 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Amy L. Yonowitz, for the State.*

*Mary March Exum, for the defendant-appellant.*

WYNN, Judge.

Following his conviction on the charge of attempted first-degree murder, defendant Mikel Rainey argues on appeal that the trial court erred by failing to instruct on the lesser-included offenses of (1) assault with a deadly weapon inflicting serious injury, and (2) attempted voluntary manslaughter. We find no error in the failure to instruct on the offense of assault with a deadly weapon inflicting serious injury because that offense is not a lesser-included offense of attempted first-degree murder. Moreover, although we hold that attempted voluntary manslaughter is (1) a crime in North Carolina, and, (2) a lesser-included offense of attempted first-degree murder, we hold that defendant was not entitled to an instruction on the lesser-included offense of attempted voluntary manslaughter. Therefore, we affirm the judgment of the Superior Court, Halifax County.

The underlying facts of this case tend to show that on 20 July 1999, defendant shot Roy Richardson, his stepbrother, three times with a shotgun in the buttocks, ankle, and thigh. On 21 July 1999, defendant turned himself into the Halifax County Sheriff's Department and made a written confession stating:

Last night my girlfriend, Stephanie Yarborough, and I had just laid down to go to bed at her house. . . . We were talking about different things that had went on during the day. I asked Stephanie what she and my [thirteen-year-old] sister . . . were talking about, when I saw both of them walking earlier in the evening. [Stephanie] said [my sister] was talking about boys she had been with intimately lately. I asked her who they were, and she said my half brother Roy Richardson . . . .

I was so mad I couldn't say anything to her. I got up and dressed and drove . . . to my Mama's house. I walked inside and went to [my sister] who was laying on my Mama's bed. I asked [her], who

she had been with, meaning having sex. She just laid there and smiled at me. I went outside and . . . [got] a shotgun. . . .

I left my Mama's house and drove to Roy Richardson's house on Lynch Road. I drove up and beeped my horn when I got to the house. I got out of the car with the shotgun to confront Roy who was stepping off the porch. I asked him, "Did you fuck my little sister?" Roy said, "It's not any of your fucking business." I pointed the gun at Roy and shot a couple of times. He fell to the ground when I hit him. He got up from the ground and turned to run away so I shot him again. I put the shotgun in the car and drove away to Stephanie's house.

While I was driving . . . something ran out and I swerved to miss it flipping Stephanie's car. It threw me out on the paved roadway. It shook me so bad I didn't know where I was. I started walking through the woods. I stayed in the woods until morning and then walked to my Mama's house. . . . This is the truth of what happened last night.

At trial, the evidence tended to conform to this confession. Defendant admitted shooting Richardson; however, he testified that he did not intend to kill Richardson. Rather, Defendant stated: "I could have [killed] him if I wanted to, but like I [said], I [wasn't] trying to kill him. I just wanted to hurt him . . . . [F]or messing with my little sister."

At the charge conference, defendant requested an instruction on attempted voluntary manslaughter and assault with a deadly weapon inflicting serious injury. The trial court denied both motions and submitted a verdict sheet giving the jurors the option of finding defendant guilty of attempted first-degree murder or not guilty.

After deliberating for an hour and twenty minutes, the jurors submitted a list of questions to the judge. Of interest, the jurors asked the judge: "Does the State come back with another charge if [defendant] is found not guilty?" The trial judge informed the jury that such an inquiry "should not bear upon . . . [the] decision in this case."

On 19 July 2001, a unanimous jury returned a guilty verdict against defendant for attempted first-degree murder. From that conviction and sentence of a minimum of 269 months and a maximum of 332 months in the North Carolina Department of Corrections, defendant appeals.

**[1]** Before this Court, defendant first argues that the trial court erred by denying his request for an instruction on assault with a deadly weapon inflicting serious injury.[1] For an offense to be a "lesser-included" offense, "all of the essential elements of the lesser crime must also be essential elements included in the greater crime." *State v. Westbrooks*, 345 N.C. 43, 55, 478 S.E.2d 483, 490 (1996). Assault with a deadly weapon requires the State to prove the existence of a deadly weapon; however, attempted murder does not require a deadly weapon. Accordingly, assault with a deadly weapon inflicting serious injury is not a lesser-included offense of attempted first-degree murder. *Cf. State v. Coble*, 351 N.C. 448, 453, 527 S.E.2d 45, 49 (2000). Therefore, this assignment of error is without merit.

**[2]** By his second assignment of error, defendant contends the trial court erred in denying his request for an instruction on attempted voluntary manslaughter. He contends that attempted voluntary manslaughter is a lesser-included offense of attempted first-degree murder. *See generally, State v. Lea*, 126 N.C. App. 440, 485 S.E.2d 874 (1997); *State v. Chamberlain*, 307 N.C. 130, 151, 297 S.E.2d 540, 552-53 (1982).

However, the State argues that this Court should not reach the question of whether defendant was entitled to the lesser-included offense instruction because attempted voluntary manslaughter is not recognized as an offense under North Carolina law. In support of this proposition, the State cites *State v. Coble*, 351 N.C. 448, 527 S.E.2d 45 (2000) in which our Supreme Court held that attempted second-degree murder is not an offense and does not exist under North Carolina law:

'In connection with [second-degree murder and voluntary manslaughter], the phrase 'intentional killing' refers not to the presence of a specific intent to kill, but rather to the fact that the act which resulted in death is intentionally committed. . . .' Moreover, we have explained that specific intent to kill is 'a necessary constituent of the elements of premeditation and delibera-

1. In North Carolina, a "defendant is entitled to have a lesser included offense submitted to the jury . . . ." *State v. Smith*, 351 N.C. 251, 267, 524 S.E.2d 28, 40 (2000) (quoting *State v. Brown*, 300 N.C. 731, 735-36, 268 S.E.2d 201, 204 (1980)). However, a "trial judge is not required to instruct the jury on lesser-included offenses" unless there is "evidence to sustain a verdict of defendant's guilt of such lesser degrees." *State v. Lea*, 126 N.C. App. 440, 447, 485 S.E.2d 874, 878 (1997) (quoting *State v. Lyons*, 340 N.C. 646, 663, 459 S.E.2d 770, 779 (1995); *State v. Shaw*, 305 N.C. 327, 342, 289 S.E.2d 325, 333 (1982)).

tion in first degree murder [ ][and] is not an element of second degree murder or manslaughter. . . .' Therefore, it logically follows that the crime of attempted murder, as recognized in this state, can be committed only when a person acts with the specific intent to commit first-degree murder.

*Coble*, 351 N.C. at 450, 527 S.E.2d at 47 (citations omitted).

Thus, the State argues that under *Coble*, our Supreme Court in holding that attempted second-degree murder is not a crime in North Carolina likewise signaled that attempted voluntary manslaughter is not an offense under North Carolina law. Nonetheless, in *Coble*, the issue decided by our Supreme Court was whether attempted second-degree murder exists as a crime under North Carolina law. Indeed, while the Court commented on both voluntary manslaughter and second-degree murder, the Court did not in fact consider the issue of whether attempted voluntary manslaughter exists as a crime in North Carolina. *See Trustees of Rowan Tech. College v. Hammond Assocs.*, 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985) ("Language in an opinion not necessary to the decision is *obiter dictum* and later decisions are not bound thereby."). Accordingly, we will consider this issue for the first time.

Other states are split on whether attempted voluntary manslaughter is a cognizable offense. Generally, states requiring "intent" as an essential element of voluntary manslaughter have recognized the offense of attempted voluntary manslaughter. *See e.g., State v. Robinson*, 643 A.2d 591, 596 (N.J. 1994) ("[A] finding of guilt of . . . manslaughter does not suggest that a defendant did not intend to kill . . . [but] indicates that the defendant, while acting with the intent to kill, did not act with the level of culpability necessary for a murder conviction . . ."); *Cox v. State*, 534 A.2d 1333, 1337 (Md. 1987) (A defendant who "suddenly attempts to perpetrate a homicide caused by heat of passion in response to legally adequate provocation" is subject to an "attempted voluntary manslaughter" conviction); *People v. Tucciarone*, 137 Cal. App. 3d 701 (1982) ("Voluntary manslaughter requires a showing of intent to kill but not malice aforethought."); *Ex parte Buggs*, 644 S.W.2d 748, 750 (Tex. Crim. App. 1983) ("The intent to commit the substantive offense of murder remains an element of attempted voluntary manslaughter, but the attempt to cause death is generated by immediate influence of sudden passion caused by provocation from the intended victim.").

On the other hand, states not requiring intent as an essential element of voluntary manslaughter have generally not recognized the

offense of attempted voluntary manslaughter. *See e.g.*, *Curry v. State*, 792 P.2d 396, 397 (Nev. 1990) (holding that general intent crimes, like voluntary manslaughter, are inconsistent with the specific intent required for a criminal attempt).

In North Carolina, intent is an essential element of voluntary manslaughter. *See e.g.*, *State v. Wallace*, 309 N.C. 141, 149, 305 S.E.2d 548, 553 (1983) (holding that "voluntary manslaughter is an intentional killing without premeditation, deliberation or malice but done in the heat of passion suddenly aroused by adequate provocation"). Nevertheless, the State, relying on *Coble*, argues that voluntary manslaughter only requires a general intent, rather than the specific intent necessary for a criminal attempt. Accordingly, the State contends voluntary manslaughter does not have as an essential element the intention to kill and is, therefore, a general intent crime.

To illustrate the State's argument, the "elements of the crime of 'attempt' consist of the following: (1) an intent by an individual to commit a crime; (2) an overt act committed by the individual calculated to bring about the crime; and (3) which falls short of the completed offense." *State v. Gunnings*, 122 N.C. App. 294, 296, 468 S.E.2d 613, 614 (1996). The State contends that the element of "intentional killing" in voluntary manslaughter represents a general intent to commit the underlying act rather than a specific intent to commit the substantive offense. In voluntary manslaughter, specifically, the State argues, heat of passion negates the ability of the assailant to form a specific intent. *See Coble*, 351 N.C. at 451, 527 S.E.2d at 48 ("It is logically impossible, therefore, for a person to specifically intend to commit a form of murder which does not have, as an element, specific intent to kill.")

However, an examination of the typical voluntary manslaughter situation reveals that heat of passion does not prevent the formation of a specific intent to kill *per se*; rather, such specific intent is either excused, justified, or negated by heat of passion arising under sudden and adequate provocation. Our Supreme Court has consistently held that a homicide committed in the moments after discovering a spouse in the act of infidelity merits a voluntary manslaughter instruction. *See* e.g., *State v. Ward*, 286 N.C. 304, 312-13, 210 S.E.2d 407, 413-14 (1974).

For instance, in the classic case, a wife comes home from work to find her husband in an adulterous relationship with another woman. The wife grabs a gun, and shoots in the direction of the mar-

ital bed killing her husband. The State would contend, as they did at oral argument, that the wife only "intended" to commit the underlying act of firing the gun; and thus, the wife did not specifically intend to kill her husband. We find this logic unpersuasive and inconsistent with North Carolina's definition of voluntary manslaughter. Indeed, the wife did "specifically intend" to kill, but that "specific intent" is legally negated by the heat of passion arising from sudden and adequate provocation. *See e.g.*, *State v. Smith*, 26 N.C. App. 283, 285, 215 S.E. 2d 830, 832 (1975) ("When one spouse kills the other in a heat of passion engendered by the discovery of the deceased and a paramour in the very act of intercourse . . . the killing . . . is manslaughter.").

We further note this interpretation comports with the "reasoning" behind why our statutory and case laws recognize a devolution from murder to manslaughter under certain circumstances. "The common law of passionate manslaughter originated in England, where the impassioned killer was treated more leniently than the calm killer because of the harshness of the then-mandatory death penalty for all cases of homicide." *State v. Robinson*, 643 A.2d 591, 594 (N.J. 1994) (citations omitted). The reduction of murder to manslaughter was a recognition that one who kills in the "heat of passion" arising from reasonable provocation is less culpable than one who kills with the cold blood of premeditation and deliberation. As one court has noted, "a finding of guilt of passion/provocation manslaughter does not suggest that a defendant did not intend to kill. Rather, [it] indicates that the defendant, while acting with an intent to kill, did not act with the level of culpability necessary for a murder conviction, due to circumstances present at the time of the killing." *Id.* at 596.

In accord, our Supreme Court has held that: "The doctrine of heat of passion is 'meant to reduce murder to manslaughter when defendant kills without premeditation and without malice, but rather under the influence of the heat of passion suddenly aroused which renders the mind temporarily incapable of cool reflection.'" *State v. Camacho*, 337 N.C. 224, 233, 446 S.E.2d 8, 13 (1994) *(quoting State v. Forrest*, 321 N.C. 186, 193, 362 S.E.2d 252, 256 (1987) (citing *State v. Jones*, 299 N.C. 103, 261 S.E.2d 1 (1980)). Thus, our case law reveals that murder is reduced to manslaughter upon a showing that heat of passion, arising from sudden provocation, *negated* the element of malice and made the mind incapable of "cool" premeditation and deliberation. *State v. Forrest*, 321 N.C. 186, 192, 362 S.E.2d 252, 256 (1987) ( "Our Court has held on numerous occasions" that a defendant who kills "in the 'heat of passion,' produced by adequate

STATE v. RAINEY

[154 N.C. App. 282 (2002)]

provocation sufficient to negate malice, is guilty of manslaughter rather than murder." Moreover, "killing in the 'heat of passion' " with "adequate provocation means a killing without premeditation [because passion] renders the mind incapable of cool reflection.' ") (citations omitted); *State v. Robbins*, 309 N.C. 771, 777, 309 S.E.2d 188, 191 (1983) ("One who kills a human being under the influence of sudden passion, produced by adequate provocation, sufficient to negate malice, is guilty of manslaughter."). By definition, the *negation* of an element requires (1) the existence of that element, and (2) evidence to negate that element. Consequently, the elements of malice and premeditation play a vital role in any heat of passion manslaughter prosecution; however, the role is limited to negation rather than affirmation.

Accordingly, in North Carolina, heat of passion voluntary manslaughter is essentially a first-degree murder, where the defendant's reason is temporarily suspended by legally adequate provocation. The specific intent to kill does exist in the mind of such a defendant; however, the defendant is only legally culpable for the general intent because the "specific intent" is not based on "cool reflection." The specific intent is based on an "adequate provocation" that would cause an individual with an ordinary firmness of mind to become provoked, and which did, in fact, provoke the defendant to commit an act spawned by provocation rather than malice.

Therefore, because intent is an essential element of heat of passion voluntary manslaughter, there is no reasonable basis to conclude that the offense of attempted voluntary manslaughter does not exist under North Carolina law. This conclusion is in accordance with the position of many other states. More importantly, this position is in accordance with the equitable principles inherent in having degrees of murder, and recognizes that a defendant's culpability for attempted murder, like a defendant's culpability for murder, is relative to the circumstances surrounding the crime.[2]

---

2. The equitable foundations of the degrees of culpability in murder further supports our position that the crime of attempted voluntary murder exists in North Carolina. For example, in *State v. Ward*, 286 N.C. 304, 312-13, 210 S.E.2d 407, 413-14 (1974), our Supreme Court pointed out that,

> When one spouse kills the other in the heat of passion engendered by the discovery of the deceased and a paramour in the very act of intercourse, or under circumstances clearing indicating that the act had just been completed, or was "severely proximate," and the killing follows immediately, it is manslaughter.

From this example in *Ward*, the defendant spouse would be convicted of voluntary manslaughter because her spouse died from the shooting. However, if her spouse did

[3] Having concluded that North Carolina recognizes the crime of attempted voluntary manslaughter, we now examine the facts of this case to determine if the trial court erred by failing to instruct on that offense. As previously noted, in North Carolina, a "defendant is entitled to have a lesser included offense submitted to the jury only when there is evidence to support that lesser included offense." *State v. Smith*, 351 N.C. 251, 267, 524 S.E.2d 28, 40 (2000). "The doctrine of heat of passion is 'meant to reduce murder to manslaughter when defendant kills without premeditation and without malice, but rather under the influence of the heat of passion suddenly aroused which renders the mind temporarily incapable of cool reflection.' " *State v. Camacho*, 337 N.C. 224, 233, 446 S.E.2d 8, 13 (1994). Therefore, to support an instruction on attempted voluntary manslaughter, a defendant must produce "heat of passion" or "provocation" evidence negating the elements of malice, premeditation, or deliberation.

Our Supreme Court has developed a significant jurisprudence pertaining to sudden provocation and the discovery of illicit sexual relationships. This jurisprudence makes it eminently clear that the law will recognize factors of mitigation when a spouse discovers an adulterous relationship and proceeds to "slay the wrongdoer in the very act . . . . [However,] redress for past offences must be sought through the process of the Courts." *State v. Harman*, 78 N.C. 515 (1878). In *State v. Ward*, our Supreme Court expounded on this jurisprudence by explaining that when one spouse kills the other in a heat of passion upon discovering the deceased in an adulterous act of intercourse, it is manslaughter.

> However, . . . knowledge of past adultery between the two will not change the character of the homicide from murder to manslaughter. The law extends its indulgence to a transport of passion justly excited and to acts done before reason has time to subdue it; the law does not indulge revenge or malice, no matter how great the injury or grave the insult which first gave it origin.

*State v. Ward*, 286 N.C. 304, 312-13, 210 S.E.2d 407, 413-14 (1974) (citing *State v. John*, 30 N.C. 330 (1848); *State v. Samuel*, 48 N.C. 74 (1855); *State v. Avery*, 64 N.C. 608 (1870); *State v. Harman*, 78 N.C. 515 (1878)).

---

not die from the shooting, then the result of the State's position that the crime of attempted voluntary manslaughter does not exist in North Carolina would mean that defendant spouse could only be convicted of the greater crime of attempted first-degree murder. Illogically, this would mean that the defendant spouse in *Ward* would face a lesser charge if she kills rather than wounds her spouse.

In the case *sub judice*, the evidence did not support an instruction on the lesser-included offense of attempted voluntary manslaughter. The evidence, conforming substantially to defendant's confession, shows that defendant was lying in bed one night when told his step-brother, Roy Richardson, had been sleeping with his thirteen-year-old sister. Defendant got out of bed, dressed, and drove to his mother's house. Defendant entered the bedroom of his little sister and asked with whom she was intimate. Defendant's sister smiled, and did not answer the question. Thereafter, defendant retrieved a shotgun from his mother's property and drove to Richardson's house. Defendant arrived at Richardson's house, honked his horn repeatedly, and, while Richardson was standing on the porch, asked, "Did you f—k my little sister?" Richardson responded, "It's not any of your f—king business." Defendant then pointed the shotgun at Richardson and shot him in the buttocks. As Richardson attempted to pull himself up, defendant shot him a second time in the ankle. Richardson fell to the ground, and, when he got up and began to run away, defendant shot him a third time in the left thigh.

This evidence shows that defendant sought out Richardson. If defendant had discovered his thirteen-year-old sister and Richardson in an illicit act, then defendant might indeed be entitled to an attempted voluntary manslaughter instruction. Here, however, defendant learned of the alleged relationship through a conversation, left his house, confronted his sister, retrieved a shotgun, drove to his step-brother's house, confronted him, and then shot him three separate times. In essence, defendant did not act immediately under a heat of passion, but rather under an indulgence of revenge or malice. As stated in *Ward*, the law does not allow him to do so, "no matter how great the injury or grave the insult which first gave it origin". Under the facts of this case, defendant was not entitled to the benefit of an instruction on attempted voluntary manslaughter; accordingly, this assignment of error is without merit.

In sum, although we hold that the crime of attempted voluntary manslaughter does exist in North Carolina, we hold that defendant was not entitled to the instruction. Accordingly, we affirm the judgment of the Superior Court, Halifax County.

No Error.

Judges TIMMONS-GOODSON and THOMAS concur.