IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-738

Filed: 7 April 2020

Pitt County, Nos. 18 CRS 50972-73, 18 CRS 653

STATE OF NORTH CAROLINA

v.

RAFIEL FOREMAN, Defendant.

Appeal by defendant from judgments entered 28 August 2018 by Judge Jeffery B. Foster in Pitt County Superior Court. Heard in the Court of Appeals 4 March 2020.

*Attorney General Joshua H. Stein, by Assistant Attorney General Forrest P. Fallanca, for the State.*

*Michael E. Casterline, P.A., by Michael E. Casterline, for defendant-appellant.*

BERGER, Judge.

On August 28, 2018, Rafiel Foreman ("Defendant") was convicted by a Pitt County jury of attempted first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury ("AWDWIKISI"), and felonious breaking and entering. On appeal, Defendant contends he received ineffective assistance of counsel when his trial counsel conceded Defendant's guilt to assault with a deadly weapon inflicting serious injury ("AWDWISI") without his knowing and voluntary consent. Defendant also argues the trial court erred when it failed to inquire into whether Defendant's *Harbison* acknowledgment was knowing and voluntary. Defendant also

filed a motion for appropriate relief with this Court pursuant to N.C. Gen. Stat. § 15A-1418. We find no error, and deny Defendant's motion for appropriate relief.

Factual and Procedural Background

Defendant and Dawn Rook ("Dawn") dated for approximately ten years, from 2007 until December 2017. Throughout the course of their relationship, Defendant never met Dawn's father, Bennet Rook ("Mr. Rook"). Mr. Rook was unaware that his daughter had been dating anyone. In December 2017, Dawn ended the relationship because Defendant was becoming "verbally mean."

On February 13, 2018, Dawn woke to several messages and missed calls from Defendant. Since Dawn had blocked Defendant's phone number, he messaged her over Facebook Messenger. The messages from Defendant included the following statements: "You better get a restraining order because this just got worse. I hope you know you pushed me to do this;" "I hope you know I'm going to physically hurt her, then I'm coming for you. I swear on my life today;" and "[I]t's over for everyone today. I'm glad I'm doing what I'm doing . . . I'm out of my mind, and you just gave me reasons to hurt people. I'm about to walk up to your house right now and talk with your father and hope to start a fistfight." Defendant then sent a photograph of the Rooks' home to Dawn, stating "I'm at your [expletive deleted] house, Dawn. Answer my call or I'm walking up there, I swear."

Dawn and her mother had already left for work by the time Defendant arrived at the Rooks' home. Mr. Rook, who was in his late 60s, was home alone. Around 10:00 a.m., Mr. Rook saw Defendant carrying a package up the sidewalk. Mr. Rook did not recognize Defendant but assumed he was a delivery person. Thinking that his wife or his daughter had ordered something, Mr. Rook met Defendant at the front door. When Mr. Rook opened the door, Defendant asked, "Are you Benny Rook?" Defendant then stabbed Mr. Rook and forced his way inside the home. Once inside, Defendant hit Mr. Rook with two side-tables, a large glass cake dome, and a wine bottle.

Defendant left the residence. He then called Dawn and told her what he had done. Meanwhile, Mr. Rook grabbed his gun, locked the door, and called his wife for help. Officers found broken glass and blood in the Rooks' home. They also observed stab marks in the linoleum floor and recovered a bent knife. Defendant also left the package with his name and address on the delivery label.

By the time Mr. Rook arrived at the hospital, he had lost approximately 20% of his blood and had sustained "life-threatening" injuries. Mr. Rook had several lacerations to his head and face and an injury to his left forearm where Defendant struck him with a table. While in surgery for his injuries, Mr. Rook suffered from an aspiration event which required the operating team to conduct a bronchoscopy. Mr. Rook spent several days in the hospital recovering.

Defendant was tried in August 2018. Prior to opening statements, Defendant's counsel introduced a "*Harbison* Acknowledgment." This sworn document was signed by Defendant and his trial counsel, and it stated that:

> Pursuant to *State v. Harbison*, 315 N.C. 175 (1985), I, Rafiel Foreman, hereby give my informed consent to my lawyer(s) to tell the jury at my trial that I am guilty of Assault with a Deadly Weapon Inflicting Serious Injury. I understand that:
>
> 1. I have a right to plead not guilty and have a jury trial on all of the issues in my case.
> 2. I can concede my guilt on some offenses or some lesser offense than what I am charged with if I desire to for whatever reason.
> 3. My lawyer has explained to me, and I understand that I do not have to concede my guilt on any charge or lesser offense.
> 4. My decision to admit that I am guilty of Assault with a Deadly Weapon Inflicting Serious Injury is made freely, voluntarily and understandingly by me after being fully appraised of the consequences of such admission.
> 5. I specifically authorize my attorney to admit that I am guilty of Assault with a Deadly Weapon Inflicting Serious Injury.

The following colloquy then occurred between the trial court and Defendant regarding the *Harbison* Acknowledgement:

> THE COURT: Mr. Foreman, I'm reading a paper that your attorney handed me. Did he discuss with you his intention to admit and concede that you are guilty of assault with a deadly weapon inflicting serious injury?
>
> [DEFENDANT]: Yes, Your Honor, he did.
>
> THE COURT: Do you understand that you have the right to plead not guilty and be tried by a jury on all issues?

- 4 -

[DEFENDANT]:    Yes, Your Honor.

THE COURT:    You understand that if you concede your guilt in this case, that the jury could in fact find you guilty of that offense?

[DEFENDANT]:    Yes, Your Honor.

THE COURT:    And you understand that you do not have to concede your guilt on that point?

[DEFENDANT]:    Yes, Your Honor.

THE COURT:    And is the decision to admit your guilt to assault with a deadly weapon inflicting serious injury made freely, voluntarily, and understandingly?

[DEFENDANT]:    Yes, Your Honor.

THE COURT:    Do you understand the ramifications of that and the consequences of such admission?

[DEFENDANT]:    Yes, Your Honor.

THE COURT:    And do you specifically authorize your attorney to admit that you're guilty of assault with a deadly weapon inflicting serious injury?

[DEFENDANT]:    Yes, Your Honor.

The trial court then found:

> that the Defendant . . ., under *State v. Harbison*, has been advised of his attorney's intention to admit his guilt to assault with a deadly weapon inflicting serious injury; [t]hat the Defendant has consented to that strategy; [t]hat consent was given freely and voluntarily after being advised of his rights; [a]nd that he knowingly, voluntarily, freely, and understandingly has acknowledged and has consented to that strategy on behalf of his counsel.

During opening statements, defense counsel conceded that Defendant was guilty of AWDWISI pursuant to the *Harbison* Acknowledgment. Counsel then argued the evidence would fail to show Defendant intended to kill Mr. Rook. At the close of the State's evidence, Defendant moved to dismiss the charges of AWDWIKISI and attempted murder. Defendant's motion was denied. The defense presented no evidence at trial.

Defense counsel also conceded Defendant's guilt to AWDWISI during closing arguments and argued that Defendant did not intend to kill Mr. Rook. The jury found Defendant guilty of AWDWIKISI, attempted first-degree murder, and felonious breaking and entering.

Defendant timely appeals, alleging he was denied effective assistance of counsel because his concession of guilt to AWDWISI was not knowing or voluntary and that he was not informed his admission of guilt would then support a conviction for attempted first-degree murder. Defendant also alleges the trial court failed to conduct an adequate *Harbison* inquiry to determine if he understood the consequences of his admission of guilt. We disagree.

## Standard of Review

"On appeal, this Court reviews whether a defendant was denied effective assistance of counsel de novo." *State v. Wilson*, 236 N.C. App. 472, 475, 762 S.E.2d 894, 896 (2014). "Under a *de novo* review, the court considers the matter anew and

freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (citation and quotation marks omitted).

<u>Analysis</u>

Ordinarily, to prevail on a claim of ineffective assistance of counsel, the defendant "must show that counsel's performance was deficient," and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). However, our Supreme Court has held that *per se* ineffective assistance of counsel exists "in every criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent." *State v. Harbison*, 315 N.C. 175, 180, 337 S.E.2d 504, 507-08 (1985). "*Harbison* applies when defense counsel concedes defendant's guilt to either the charged offense or a lesser included offense." *State v. Alvarez*, 168 N.C. App. 487, 501, 608 S.E.2d 371, 380 (2005). However, *Harbison* does not apply where defense counsel has conceded an element of a crime charged, while still maintaining the Defendant's innocence. *Wilson*, 236 N.C. App. at 477, 762 S.E.2d at 897.

Defendant argues that his trial counsel's concession of guilt to AWDWISI "effectively admitted to the far more serious charge of attempted first-degree murder."

"For an offense to be a lesser-included offense, all of the essential elements of the lesser crime must also be essential elements included in the greater crime." *State v. Rainey*, 154 N.C. App. 282, 285, 574 S.E.2d 25, 27 (2002) (citation and quotation marks omitted). "The essential elements of assault with a deadly weapon inflicting serious injury are: (1) an assault (2) with a deadly weapon (3) inflicting serious injury (4) not resulting in death." *State v. Littlejohn*, 158 N.C. App. 628, 635, 582 S.E.2d 301, 306 (2003) (citations and quotation marks omitted). The essential elements of attempted first-degree murder are (1) a specific intent to kill another person unlawfully; (2) "an overt act calculated to carry out that intent, going beyond mere preparation;" (3) the existence of malice, premeditation and deliberation accompanying the act; and (4) a failure to complete the intended killing. *State v. Cozart*, 131 N.C. App. 199, 202-03, 505 S.E.2d 906, 909 (1998).

AWDWISI is not a lesser-included offense of attempted first-degree murder. *See Rainey*, 154 N.C. App. at 285, 574 S.E.2d at 27 ("Assault with a deadly weapon requires the State to prove the existence of a deadly weapon; however, attempted murder does not require a deadly weapon. Accordingly, assault with a deadly weapon inflicting serious injury is not a lesser-included offense of attempted first-degree murder."). AWDWISI requires proof of an element not required for attempted first-degree murder: the use of a deadly weapon. *Cozart*, 131 N.C. App. at 204, 505 S.E.2d at 910. In addition, attempted first-degree murder requires proof of elements not

required for AWDWISI: an intent to kill, and premeditation and deliberation. Although defense counsel conceded guilt to AWDWISI, the State, in this case, still had to prove the elements of intent to kill, and malice, premeditation and deliberation. Because the State had to prove additional elements for attempted first-degree murder, AWDWISI is not a lesser-included offense and Defendant's concession of guilt to that offense does not support a conviction for attempted first-degree murder.

Furthermore, Defendant's consent to his concession of guilt for AWDWISI was knowing and voluntary. Defendant confirmed that he understood the ramifications of conceding guilt to AWDWISI and that he had the right to plead not guilty. Defendant's counsel filed the *Harbison* Acknowledgment in which Defendant expressly gave his trial counsel permission to concede guilt to AWDWISI after "being fully appraised of the consequences of such admission." In this case, the facts show that Defendant knew his counsel was going to concede guilt to AWDWISI, and the trial court properly ensured that Defendant was aware of the ramifications of such a concession. In addition, at no point at trial did defense counsel concede guilt to attempted murder. Defendant's argument that his concession to AWDWISI was a concession of guilt for attempted murder is meritless. Therefore, we conclude that Defendant was not denied effective assistance of counsel in violation of *Harbison*. *See State v. Matthews*, 358 N.C. 102, 109, 591 S.E.2d 535, 540 (2004).

Defendant next argues that the trial court failed to conduct an adequate *Harbison* inquiry to determine if he understood the consequences of conceding guilt to AWDWISI because the court "focused solely on the implications of being convicted of the lesser assault," not the "*de facto* admission of the elements of attempted first-degree murder." We disagree.

"The standard of review for alleged violations of constitutional rights is *de novo*." *State v. Hamilton*, ___ N.C. App. ___, ___, 822 S.E.2d 548, 552 (2018), *rev. dismissed*, ___ N.C. ___, 830 S.E.2d 822 (2019), and *rev. denied*, ___ N.C. ___, 830 S.E.2d 824 (2019).

"[T]he trial court must be satisfied that, prior to any admissions of guilt at trial by a defendant's counsel, the defendant must have given knowing and informed consent, and the defendant must be aware of the potential consequences of his decision." *State v. Maready,* 205 N.C. App. 1, 7, 695 S.E.2d 771, 776 (2010). "The facts must show, at a minimum, that defendant *knew* his counsel [was] going to make such a concession." *Matthews*, 358 N.C. at 109, 591 S.E.2d at 540 (emphasis in original).

In *State v. Johnson*, the defendant argued on appeal that the trial court failed to conduct an adequate *Harbison* inquiry as to whether he knowingly and voluntarily consented to conceding guilt. 161 N.C. App. 68, 76, 587 S.E.2d 445, 451 (2003). At trial, the court directly asked the defendant the following:

THE COURT: [Y]ou have heard what [defense counsel] just said. Have ya'll previously discussed that before he made his opening statements?

THE DEFENDANT: Yes, sir, we did.

THE COURT: And did he have your permission and authority to make that opening statement to the jury?

THE DEFENDANT: Yes, sir, he did.

THE COURT: You consent to that now?

THE DEFENDANT: Yes, sir.

*Id.* at 77, 587 S.E.2d at 451 (ellipses omitted). This Court found that the trial court's inquiry was sufficient "to establish that defendant had previously consented to his counsel's concession that he was present and had" committed the crime for which he was conceding guilt. *Id.* at 77-78, 587 S.E.2d at 451.

In the present case, Defendant's concession of guilt to AWDWISI was not a concession of guilt to attempted first-degree murder because, as stated earlier, the State still had to prove the elements of intent to kill and premeditation and deliberation. Moreover, Defendant understood the implications of admitting guilt to AWDWISI as shown by his colloquy with the trial court. The trial court questioned Defendant to determine whether he gave his defense counsel permission to admit guilt. The record demonstrates that Defendant fully understood that trial counsel was going to concede guilt to AWDWISI, and the Defendant expressly consented to the concession. Further, Defendant specifically acknowledged that he understood the

consequences of the concession. In addition, the trial court also inquired as to whether Defendant met with defense counsel about the admission of guilt, and whether Defendant understood he could plead not guilty to all issues. Thus, the trial court did not err.

Finally, Defendant filed a motion for appropriate relief with this Court pursuant to N.C. Gen. Stat. § 15A-1418. A defendant's motion for appropriate relief may be determined by this Court if there is sufficient information in the record. N.C. Gen. Stat. § 15A-1418 (2019). "A defendant who seeks relief by motion for appropriate relief must show the existence of the asserted ground for relief." N.C. Gen. Stat. § 15A-1420(c)(6) (2019). Because the trial court conducted an appropriate *Harbison* inquiry, as set forth above, Defendant cannot show that his "conviction was obtained in violation of the Constitution of the United States or the Constitution of North Carolina." N.C. Gen. Stat. § 15A-1415(b)(3) (2019). Because Defendant cannot show the existence of the asserted ground for relief, i.e., a *Harbison* violation, Defendant's motion for appropriate relief is denied.

## Conclusion

For the foregoing reasons, we hold Defendant's consent was knowing and voluntary as he was aware of the consequences and ramifications of such an admission. As Defendant's consent to his attorney's concession of guilt was knowing

and voluntary, he was not denied effective assistance of counsel in violation of *Harbison*. Defendant's motion for appropriate relief is denied.

AFFIRMED IN PART, DENIED IN PART.

Judge DIETZ and BROOK concur.