IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-696

No. COA21-129

Filed 21 December 2021

Craven County, Nos. 18 CRS 50854, 19 CRS 161, 550

STATE OF NORTH CAROLINA

v.

JEREMIE LAMAR BRYANT

Appeal by Defendant from Judgment entered 6 March 2020 by Judge Joshua W. Willey, Jr., in Craven County Superior Court. Heard in the Court of Appeals 20 October 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Forrest P. Fallanca, for the State.*

*Aberle & Wall, by A Brennan Aberle, for defendant-appellant.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Jeremie Lamar Bryant (Defendant) appeals from Judgment entered upon a jury finding him guilty of one count each of Sale of Heroin, Possession with Intent to Sell or Distribute Heroin, and Possession of Drug Paraphernalia and Defendant's guilty plea to attaining Habitual-Felon Status. The Record reflects the following:

On 13 November 2018, a Craven County Grand Jury indicted Defendant on one count each of felony Possession with Intent to Sell or Deliver (PWISD) Heroin and Possession of Drug Paraphernalia (18 CRS 50854). On 11 February 2019, Defendant was indicted for having attained Habitual-Felon Status (19 CRS 161), and on 5 August 2019, Defendant was indicted for one count of felony Sale of Heroin (19 CRS 550). All of these charges stemmed from Defendant's alleged actions on 5 January 2017. On that date, the New Bern Police Department set up a "controlled purchase" of narcotics through an informant from a person known as Daniel Cox (Cox). Cox told the informant to meet him at the Beaver Creek Apartment Complex. Police had placed two body cameras on the informant and gave him 80 dollars to purchase heroin. Video of the incident showed when the informant arrived at the apartment complex, Defendant came out of a residence, handed the informant a clear plastic baggie containing heroin, and took money from the informant. The informant could see Cox in the doorway of the residence from which Defendant had exited prior to the exchange.

Defendant's case came on for trial on 4 March 2020 in Craven County Superior Court. The State elected not to give opening remarks to the jury. Defense counsel did give opening remarks; however, neither party moved for complete recordation. Therefore, there is no transcript of defense counsel's opening remarks. However,

before either side presented evidence to the jury, the State expressed concerns with

defense counsel's opening remarks:

> [The State]: Your Honor, during the opening statement Attorney Bettis made reference to -- or gave statements that tends to indicate his client has either admitted guilt to a certain extent about possessing it, or what have you. There were some portions that would, I think, tend to lean toward admissions about his client, and based on Harrison. So I think we need to make sure that the defendant is consenting to the fact that Attorney Bettis made those statements on his behalf. I believe what I recall hearing was something along the lines of, he did it but he didn't intend to do it, is how I can best categorize it. Under Harrison that would be plain error, unless this defendant consented to those statements being made on his behalf. And I think what will have to happen, Your Honor would need to put on the record that this defendant consented to Attorney Bettis making those comments to the jurors.
>
> [Defense Counsel]: And I will say that my statements were something along the lines of, Ms. Chekesha has a videotape that she's going to show you, and it's going to show my client on there doing what Ms. Chekesha is alleging to do, but I don't think we -- we admitted anything. But in order to admit a crime, you'd have to admit both elements of the crime, not just one element of the crime, and it's not a crime. He didn't admit to a crime if he didn't admit to both elements of it.
>
> [The State]: Not a -- well, certainly I think I heard an admission to one particular element, and I certainly heard an admission that he was a prior convicted felon, which would be the second portion of all that, even to the extent that the felonies were read out or told to the jurors.
>
> [Defense Counsel]: Your Honor, I did do this with my client at length. We've gone over this hour after hour in preparation to -- to -- to -- I mean, you can stand up right now --

¶ 4     The trial court held the following colloquy with Defendant:

> THE COURT: Well, I'm going to -- Mr. Bryant, are you able to hear me?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT: Can you understand me?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You are charged with the offenses of possession, intent to sell and deliver controlled substance, heroin, possession, intent to use drug paraphernalia, sale of a controlled substance, heroin, and with being a habitual felon.  To one of the things, I believe -- you don't have a copy of the Pattern Jury Instructions, do you?
>
> [The State]: I do, Your Honor.  Which are you looking for?  All of them?
>
> THE COURT: Yes.  (Handed documents to Court.)
>
> THE COURT: One of the charges, possession with intent to sell -- with intent to sell or deliver a controlled substance, in this case cocaine, to prove that, the State would have to prove --
>
> [The State]: Heroin, Judge.
>
> THE COURT: Heroin.  I'm sorry.  To prove that offense, the State would have to prove two elements.  The first is that you knowingly possessed the controlled substance, and the second is that you intended to sell or deliver.  Now, I was not aware that your attorney would make any admissions during the opening statement until he did so.  But as I understood his opening statement, he admitted that you possessed the controlled substance, but -- which is one of the things the State would have to prove, have to prove you knowingly did it with the intent to sell or deliver.  So he's admitted at least a portion of what the State

would need to prove with respect to that offense. You're also charged -- well, he stated, You'll see evidence or see a video that will show Mr. Bryant approaching someone and delivering a substance to them and the substance was a controlled substance. Again the State must prove that you knowingly delivered or sold the substance to the buyer of this -- of the other person. So in the opening, at least the way I interpreted it, there was at least an admission that you had possessed something, that you delivered to, I guess it was an informant.

[The State]: Yes, sir.

THE COURT: And do you understand that?

THE DEFENDANT: I do.

THE COURT: Do you understand that during opening, your attorney admitted at least some of the things that the State would need to prove to convict you?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Was that something that you and he had discussed beforehand?

THE DEFENDANT: Yeah.

THE COURT: Did he have your permission to make those admissions?

THE DEFENDANT: Yes. Yes.

THE COURT: Now, you are also charged with being a habitual felon, and generally it's a bifurcated trial or a bifurcated hearing, and the jury is not aware of that charge until after they convict the defendant of some -- some felony offense. On that charge, when we got to that, what the State would have to prove is that you had had three prior felony convictions. Now, again, during opening Mr. Bettis spoke at length about your prior record and

the fact that you had made some mistakes in the past and in fact had been convicted out -- my recollection is he specifically went through the -- the -- the felonies about which you -- of which you'd been convicted. Had you and he discussed the fact that those admissions would be made?

THE DEFENDANT: Yes. Yes.

THE COURT: And were the admissions made with your consent?

THE DEFENDANT: Yes.

THE COURT: Any other inquiry you'd like the Court to make, Ms. Hukins?

[Prosecutor]: No, sir.

THE COURT: Okay. I think that covers it.

[The State]: Thank you.

[Defense Counsel]: Just for the record?

THE COURT: Yes, sir.

[Defense Counsel]: We've been discussing this -- we've been discussing his trial at length. We had him in the office and had long conversations, and this is a part of trial strategy that we think is in his best interest.

¶ 5      The jury found Defendant guilty of Sale of Heroin, PWISD Heroin, and Possession of Drug Paraphernalia. After the jury's verdict, Defendant pled guilty to having attained Habitual-Felon Status as evidenced by his Transcript of Plea. On 6 March 2020, the trial court entered a Judgment and Commitment with the charges in 18 CRS 50854 and 19 CRS 161 and 550 consolidated under 19 CRS 550 and

sentenced Defendant to 88 to 118 months imprisonment. On 17 March 2020, Defendant filed written Notice of Appeal from the trial court's 6 March 2020 Judgment to this Court.

## Issue

The sole issue on appeal is whether, to the extent defense trial counsel's admissions during opening statements of the existence of elements of the charged offenses triggered the requirement the trial court inquire of Defendant as to Defendant's consent to those admissions, the trial court made an adequate inquiry of Defendant pursuant to *State v. Harbison*.

## Analysis

As a threshold matter, the State contends the Record is insufficient for this Court to conduct meaningful appellate review because the transcript does not include defense counsel's opening remarks. "This Court's review on appeal is limited to what is in the record or in the designated verbatim transcript of proceedings. Rule 9(a), N.C. Rules App. Proc. An appellate court cannot assume or speculate that there was prejudicial error when none appears on the record before it." *State v. Moore*, 75 N.C. App. 543, 548, 331 S.E.2d 251, 254 (1985) (citing *State v. Alston*, 307 N.C. 321, 298 S.E.2d 631 (1983)). "[A] defendant's counsel's statement must be viewed in context to determine whether the statement was, in fact, a concession of defendant's guilt of

a crime, . . . or amounted to a *lapsus linguae.*" *State v. Mills*, 205 N.C. App. 577, 587, 696 S.E.2d 742, 748-49 (2010) (citations omitted).

¶ 8        Although the transcript does not include defense counsel's opening remarks, the transcript does include counsels' colloquy with the trial court discussing and characterizing defense counsel's statements during opening remarks. The transcript also includes the trial court's colloquy with Defendant where the trial court asked Defendant whether he consented to defense counsel's admissions. Therefore, the Record is sufficient for this Court to review whether defense counsel's statements constituted admissions of guilt, and the trial court erred in allowing the trial to continue, in light of defense counsel's statements, without further inquiry. *See State v. Harbison*, 315 N.C. 175, 178, 337 S.E.2d 504, 506 (1985), *cert. denied*, 476 U.S. 1123, 90 L. Ed. 2d 672 (1986) (holding, although there was no transcript of counsel's closing remarks, the record was sufficient where the trial court based its denial of defendant's motion on the contents of the motion and answers to interrogatories submitted with the motion).

¶ 9        Defendant argues defense counsel's statements constituted admissions of guilt and that, because the trial court did not make "an adequate *Harbison* inquiry" as to whether Defendant consented to these statements, Defendant was denied effective assistance of counsel. We review whether a defendant was denied effective assistance of counsel de novo. *State v. Wilson*, 236 N.C. App. 472, 475, 762 S.E.2d 894, 896

(2014) (citation omitted). "To prevail on a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense." *State v. Allen,* 360 N.C. 297, 316, 626 S.E.2d 271, 286 (citations and quotation marks omitted), *cert. denied,* 549 U.S. 867, 166 L. Ed. 2d 116 (2006). However, "when counsel to the surprise of his client admits his client's guilt, the harm is so likely and so apparent that the issue of prejudice need not be addressed." *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507. "[A] criminal defendant suffers a per se violation of his constitutional right to effective assistance of counsel when his counsel concedes the defendant's guilt to the jury without his prior consent." *State v. McAllister*, 375 N.C. 455, 456, 847 S.E.2d 711, 712 (2020) (citing *Harbison*, 315 N.C. 175, 337 S.E.2d 504).

¶ 10        Defendant contends defense counsel "admitted to almost every element of every crime charged as well as habitual felon status in front of the jury during opening statements" triggering a *Harbison* inquiry. Thus, we first must determine if defense counsel's statements were in fact admissions triggering *Harbison*. *State v. Maniego*, 163 N.C. App. 676, 683, 594 S.E.2d 242, 246 (2004) (citation omitted). We first note the facts in this case are distinguishable from the facts in *Harbison*. In *Harbison*, defense counsel expressly told the jury to find the defendant guilty of manslaughter and not first-degree murder. 315 N.C. at 178, 337 S.E.2d at 506. Here, defense counsel stated he did not admit Defendant's guilt in any crime.

¶ 11        Moreover: "Admission by defense counsel of an element of a crime charged, while still maintaining the defendant's innocence, does not necessarily amount to a *Harbison* error." *State v. Wilson*, 236 N.C. App. 472, 476, 762 S.E.2d 894, 897 (2014) (citation omitted). In *State v. Fisher*, the defendant was convicted of first-degree murder. 318 N.C. 512, 516, 350 S.E.2d. 334, 337 (1986). During closing remarks, defense counsel stated: "[s]econd[-]degree [murder] is the unlawful killing of a human being with no premeditation and no deliberation but with malice, illwill. You heard [the defendant] testify, there was malice there. . . ." *Id.* at 533, 350 S.E.2d at 346. On appeal, the North Carolina Supreme Court held: "Although counsel stated there was malice, he did not admit guilt, as he told the jury that they could find the defendant not guilty. . . . [Therefore,] this case does not fall with the *Harbison* line of cases[.]" *Id.*

¶ 12        The Record, here, shows defense trial counsel characterized his opening remarks as: "[The State] has a videotape . . . and it's going to show my client on there doing what [the State] is alleging"—handing a baggie containing heroin to the informant—but that counsel did not "think we admitted anything." Counsel further asserted: "But in order to admit a crime, you'd have to admit both elements, not just one element of the crime . . . . He didn't admit to a crime if he didn't admit to both elements." The State argued it "heard an admission to one particular element, and . . . an admission that he was a prior convicted felon[.]" The State did not challenge

defense counsel's characterization of his opening statements. *Harbison*, 315 N.C. at 178, 337 S.E.2d at 506.

¶ 13        Sale of Heroin and PWISD Heroin are specific intent crimes requiring the State to prove the defendant intended to sell or deliver heroin. *State v. Creason*, 313 N.C. 122, 129, 326 S.E.2d 24, 28 (1985) ("It is the *intent* of the defendant [to sell or deliver] that is the gravamen of the offense."). Defense counsel explained to the trial court: "We've been discussing this -- we've been discussing his trial at length. We had him in the office and had long conversations, and this is a part of trial strategy that we think is in his best interest." Indeed, Defendant testified at trial that he, in fact, did take the baggie containing heroin to the informant as a favor to Cox, but he did not know the substance in the baggie was heroin, and he never intended to sell heroin during that exchange. Thus, Defendant maintained although he may have committed the acts in question, he did not have the requisite intent to convict on these charges. Therefore, as to the Sale of Heroin and PWISD Heroin charges, defense counsel did not admit Defendant's guilt because defense counsel did not admit Defendant intended to sell or deliver the heroin. *See Wilson*, 236 N.C. App. at 478, 762 S.E.2d at 898 (holding defense counsel's admission the defendant pointed a gun at a person with the intent to kill was not an admission of attempted first-degree murder with which the defendant was charged).

¶ 14        However, a *Harbison* violation is not limited to cases where defense counsel expressly admits to the defendant's guilt of a specific charged offense: "*Harbison* should instead be applied more broadly so as to also encompass situations in which defense counsel impliedly concedes his client's guilt without prior authorization." *McAllister*, 375 N.C. at 473, 847 S.E.2d at 722. Defense counsel's statements could have been admissions to Defendant possessing drug paraphernalia. N.C. Gen. Stat. § 90-113.22 provides: "It is unlawful for any person to knowingly use, or to possess with intent to use, drug paraphernalia . . . ." N.C. Gen. Stat. § 90-113.22 (2019). Evidence of mere possession without further incriminating evidence is insufficient to satisfy the statute's intent requirement. *State v. Hedgecoe*, 106 N.C. App. 157, 164, 415 S.E.2d 777, 781 (1992) (citing *State v. Jones*, 96 N.C. App. 389, 386 S.E.2d 217 (1989)). Here, Defendant testified he exchanged the baggie for money and that he thought the substance may have been "hash." Thus, Defendant testified to other incriminating circumstances that may have been sufficient to satisfy the intent requirement for Possession of Drug Paraphernalia.

¶ 15        Moreover, the North Carolina Supreme Court has held that counsel's admission of a lesser-included charge also triggers *Harbison*. *State v. Matthews*, 358 N.C. 102, 109, 591 S.E.2d 535, 540-41 (2004) (finding per se ineffective assistance of counsel where defense counsel conceded defendant's guilt to second-degree murder, a lesser-included offense, without defendant's permission). "[P]ossession of [narcotics]

is an element, and therefore a lesser included offense, of possession with intent to manufacture, sell, or deliver [narcotics]." *State v. Turner*, 168 N.C. App. 152, 159, 607 S.E.2d 19, 24 (2005).

¶ 16 Here, Defendant testified at trial that he did not know the substance he handed to the informant was heroin. When a defendant presents evidence the defendant did not know the substance the defendant possessed was a controlled substance, the State must prove beyond a reasonable doubt the defendant did know the substance was that controlled substance. 1 N.C.P.I.-Crim. 260.15 n.2 (June 2014). Although, based on this Record, defense counsel may not have expressly admitted to Defendant knowingly possessing heroin, counsel's statements implicated a lesser-included offense possibly triggering *Harbison*. However, even assuming these statements were, in fact, admissions of possession of drug paraphernalia and lesser-included drug possession offenses under *Harbison*, the trial court's inquiry into Defendant's prior consent was adequate.

¶ 17 Defendant contends the trial court's colloquy with Defendant as to whether Defendant consented to defense counsel's remarks was insufficient under *Harbison* because the trial court did not discuss the State's burden of proof applicable to all the charges—specifically, the trial court did not discuss the State's burden in the Possession of Drug Paraphernalia charge. Although "an on-the-record exchange between the trial court and the defendant is the preferred method of determining

whether the defendant knowingly and voluntarily consented to an admission of guilt during closing argument," our courts have "also declined to define such a colloquy as the sole measurement of consent.' " *McAllister*, 375 N.C. at 477, 847 S.E.2d at 724 (citation and quotation marks omitted). We have previously held that a trial court's colloquy with a defendant after defense counsel's opening statements admitting to lesser crimes was adequate under *Harbison*. *State v. Johnson*, 161 N.C. App. 68, 77-78, 587 S.E.2d 445, 451 (2003).

¶ 18        Indeed, *State v. Johnson* presents an analogous situation to this case. In *Johnson*, the defendant was charged with murdering three people, among other charges. *Id.* at 70, 587 S.E.2d at 447. During opening remarks, defense counsel admitted that the defendant killed three people, but that he did so without premeditation or deliberation but because he was in a drunken rage. *Id.* at 71, 587 S.E.2d at 448. The trial court addressed the defendant stating:

> THE COURT: . . . [Y]ou have heard what [defense counsel] just said. Have ya'll previously discussed that before he made his opening statements?
>
> THE DEFENDANT: Yes, sir, we did.
>
> THE COURT: And did he have your permission and authority to make that opening statement to the jury?
>
> THE DEFENDANT: Yes, sir, he did.
>
> THE COURT: You consent to that now?

THE DEFENDANT: Yes, sir.

*Id.* at 77, 587 S.E.2d at 451. The trial court did not discuss the individual elements and the State's burden with the defendant. We held that "on the unique facts of this case . . . the trial court's inquiry was adequate to establish that defendant had previously consented to his counsel's concession that he was present and had fired the shots that killed three people[.]" *Id.* at 77-78, 587 S.E.2d at 451. Thus, upon proper facts, a trial court's inquiry as to whether the defendant consented to defense counsel's opening remarks generally may be sufficient under *Harbison*. *See id.*

¶ 19 Here, although the trial court did not specifically address the elements of Possession of Drug Paraphernalia and the State's burden in proving this charge, the trial court did go into detail with respect to the other charges. Moreover, the trial court asked Defendant whether he was aware defense counsel admitted "at least some of the things that the State would need to prove to convict" Defendant. Defendant acknowledged that he did understand. The trial court also asked whether Defendant had discussed these statements before trial and whether defense counsel had Defendant's "permission to make those admissions[.]" Defendant answered in the affirmative. Therefore, although the better practice may have been for defense counsel to make a record of Defendant's consent prior to making these opening statements, the trial court conducted an adequate inquiry after the fact under *Harbison* to establish a record of Defendant's consent to these admissions. *Id.*

¶ 20   Defendant also argues defense counsel admitted Defendant's guilt in the predicate felonies required to convict him of attaining Habitual-Felon Status. However, the trial court also addressed these admissions in its colloquy with Defendant by acknowledging defense counsel admitted to the existence of each of the prior felony convictions and inquiring of Defendant whether trial counsel had previously discussed those admissions and whether Defendant consented to those admissions. Defendant again responded they had discussed those admissions and Defendant consented to those admissions. Thus, on the facts of this case, the trial court made an adequate inquiry as to Defendant's consent consistent with *Harbison*. Moreover, after Defendant was convicted of the drug charges in this case, Defendant pled guilty—as evidenced by Defendant's Transcript of Plea—to having attained Habitual-Felon Status, and, before accepting the plea, the trial court conducted the required inquiry as to the voluntariness of Defendant's plea.

¶ 21   Therefore, we conclude to the extent defense trial counsel's admissions in opening statements triggered *Harbison*, the trial court's colloquy with Defendant in this case was adequate to ascertain Defendant's consent to those admissions. Consequently, Defendant was not per se denied effective assistance of counsel.[1]

---

[1] Defendant requests, if we reject his *Harbison* argument, that in the alternative, we preserve his future right to bring a Motion for Appropriate Relief arguing he received ineffective assistance of counsel. Our decision here is limited to whether Defendant received

## <u>Conclusion</u>

Accordingly, for the foregoing reasons, we conclude there was no error at trial and affirm the Judgment.

NO ERROR.

Judges DILLON and DIETZ concur.

---

per se ineffective assistance of counsel under *Harbison*. We express no opinion on any other bases Defendant might have for a future Motion for Appropriate Relief.